IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| SHARON COFFEY, as the Wrongful Death Representative of Thomas Wayne Coffey,<br><br>    Plaintiff,<br><br>vs.<br><br>CHEVRON U.S.A. INC., a/k/a Chevron North America Exploration and Production Company, and/or Chevron U.S.A. Production Co.,<br><br>    Defendant. | Case No. 2:16-CV-00001-SWS |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment [ECF No. 26]. On February 26, 2014, Thomas Wayne Coffey ("Mr. Coffey") fell from the top of a tanker trailer unit at the Glencoe Junction Sulfur Loading Terminal near Kemmerer, Wyoming and succumbed to his injuries. Plaintiff, Sharon Coffey, brings this premises liability and negligent wrongful death action against Defendant, Chevron U.S.A., alleging the safety-cage at Chevron's facility was defective. Defendant argues the Plaintiff failed to establish Chevron owed Mr. Coffey a duty or that Chevron breached its alleged duty and therefore, is entitled to judgment as a matter of law. Defendant also argues there is no evidence Chevron's conduct was willful and wanton and asks for judgment on the matter of punitive damages.

# FACTS

Chevron ships molten sulfur from its Carter Creek gas plant to the Glencoe Terminal where the product is stored, loaded, and shipped via rail and truck. (ECF No. 34, at 2). Chevron installed two custom three-rail Carbis safety-cages and a gangway at the terminal in 2004; Chevron later replaced these safety-cages with a similar three-rail Carbis system in 2007. (ECF No. 34, Ex. 3 63:6–8 and 68:1–70:15). At some point prior to 2014, Chevron's operator of the Glencoe Terminal, Mr. Marshinksy, noticed the bottom rails of both Carbis safety-cages were missing. (ECF No. 34, Ex. 3 94:14–23). The cause and circumstances in which the bottom rail was removed and by whom remains disputed. A photo of the Glencoe Terminal and two Carbis safety-cages (with the bottom rail removed) is set forth below:



2

Mr. Coffey was at Chevron's Glencoe Terminal on February 26, 2014 loading molten sulfur in his capacity as a truck driver for Bonneville Transloaders Inc. ("BTI"). (ECF No. 1, at ¶ 36). On that day, BTI assigned its employee, Mr. Box, to accompany Mr. Coffey to provide on-the-job training because Coffey did not have experience loading trucks at the Chevron facility. (ECF No. 26, Ex. 2 88:15–88:25 and 93:6–93:18).

Plaintiff alleges Mr. Coffey fell to his death through the gap created by the missing bottom rail in the Carbis system after Coffey lost his balance lifting Chevron's loading arm. (ECF No. 34, at 7). Defendant contends the fall occurred when Mr. Coffey tripped on the truck's spill trough after lifting the loading arm. (ECF No. 27, at 4).

Chevron had no contractual relationship with BTI. Chevron sold its sulfur to Merit Energy but the product was stored at Chevron's Glencoe Terminal until it was loaded for delivery. In this case, the buyer of the molten sulfur—Simplot—hired BTI to load the sulfur at Chevron's facility and transport it to the Simplot facility in Rock Springs. (ECF No. 34, Ex. 19 17:1–24, 18:10–19:6).

## DISPUTED MATERIAL FACTS

1. Defendant states control of the hazard in question, the safety-cage which allegedly injured the Plaintiff, was ceded to BTI. Plaintiff alleges Chevron controlled and maintained the modified safety-cage, and required BTI drivers to use the equipment during loading operations.

2. Defendant alleges the hazard of falling while loading the sulfur was known to BTI and its employees including Mr. Box. Plaintiff states BTI and its employees had a reasonable belief the safety-cages were reasonably safe.

3

3. Defendant alleges Mr. Coffey parked his truck too far away from the loading rack creating a gap which contributed to his fall. Plaintiff argues Mr. Coffey parked the unit in the correct position.

4. The parties disagree on the cause of Mr. Coffey's fall. Defendants allege Mr. Coffey tripped on the spill trough while Plaintiffs suggest Mr. Coffey lost his balance when he lifted Chevron's load arm.

5. Defendant states there is no evidence that the Carbis system materially increased the risk to Mr. Coffey or was the cause of the accident. Plaintiff argues Mr. Coffey was required to use Chevron's equipment and would not have fallen to the ground if reasonably safe fall protection were in place at the Glencoe Terminal.

## STANDARD OF REVIEW

Summary judgment is appropriate when the Court, viewing the record in light most favorable to the nonmoving party, determines "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56; *see also Garrison v. Gambro Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). A fact is "material" if it could influence the determination of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a reasonable trier-of-fact could return a verdict for either party. *Id.* In cases where the moving party will not bear the burden of persuasion at trial, the movant bears the initial responsibility of identifying "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e)). The party opposing a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citing *Celotex*, 477 U.S. at 324). The nonmoving party may not rely merely on allegations or denials in its own pleadings. FED. R. CIV. P. 56(e); *see also Celotex*, 477 U.S. at 324. Neither may the party opposing summary judgment rely on statements or assertions that are inadmissible, "[i]t is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment." *Wright–Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1268 (10th Cir. 1998) (quoting *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995)); *see also Montes v. Vail Clinic, Inc.*, 497 F.3d, 1160, 1176 ("Under our precedents, we are constrained to disregard such hearsay on summary judgment when, as here, there is a proper objection to its use and the proponent of the testimony can direct us to no applicable exception to the hearsay rule."); *and Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209 (10th Cir. 2010). Additionally, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, "the burden on the moving party may be discharged by" demonstrating to the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see also Florom v. Elliott Mfg.*, 867 F.2d 570, 574 (10th Cir.1989) (citation omitted).

## DISCUSSION

Plaintiff's claims against the Defendant arise from diversity of citizenship, 28 U.S.C. § 1332. Plaintiff is a Wyoming resident. Defendant is a Pennsylvania corporation with its principal place of business in California. Therefore, this Court must apply Wyoming substantive law in this matter. *Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 850 (10th Cir. 2015).

*A. Negligence Claim—Duty to Maintain the Property*

Plaintiff alleges Chevron, as the owner of the Glencoe Terminal, owed Mr. Coffey a duty to act with reasonable care, including the duty to maintain the property in a reasonably safe condition. (ECF No. 1, at ¶ 67). In alleging a duty was owed to Mr. Coffey, Plaintiff advances a theory of premises liability; however, if the Court determines the Wyoming independent contractor cases apply, then Plaintiff argues the Defendant owed a duty because Chevron controlled, in part, the work that caused Mr. Coffey's injuries. (ECF No. 34, at 11–17).

Defendant, on the other hand, alleges Chevron did not owe a duty to Mr. Coffey because a property owner is not required to protect against hazards incidental to the work

6

the injured party was required to perform. (ECF No. 27, at 14). In advancing this argument, Defendant asks the Court to consider the line of independent contractor cases under Wyoming law and apply the exception to the general duty owed to an invitee under premises liability. Additionally, Defendant alleges it had no duty to warn of an obvious danger and the relevant regulatory standards did not create a duty of care as it relates to Mr. Coffey. *Id.* at 15–20. As to whether a duty of care exists is often a question of law resolved by a court; however, a question of whether an employer of an independent contractor retained sufficient control to impose a duty of care is a question of fact for the jury unless only one reasonable inference can be drawn. *Merit Energy Co., LLC, v. Horr*, 366 P.3d 489, 496 (Wyo. 2016).

   i.   *Premises Liability—Unreasonably Dangerous Conditions*

"[W]hen a business invitee is injured as a result of a landowner's failure to exercise reasonable care for the protection of the business invitee, the landowner is liable." *Boswell v. Colloid Envtl. Tech.*, 236 F.R.D. 682, 685 (D. Wyo. May 6, 2006). A landowner's duty is to protect an invitee against unreasonably dangerous conditions, not against every conceivable risk of injury. *Radosevich v. Board of Cnty. Comm'rs of Sweetwater Cnty.*, 776 P.2d 747, 749 (Wyo. 1989). Wyoming law does not distinguish between invitees and licensees; therefore, a landowner owes both a duty to exercise reasonable care. *See Union Pacific R.R. Co. v. Caballo Coal Co.*, 246 P.3d 867, 873 n. 2 (Wyo. 2011). The parties disagree as to whether or not the modified Carbis safety-cage created an unreasonably dangerous condition at the Glencoe Terminal.

Defendant alleges Plaintiff has presented no evidence showing the modified Carbis safety system materially increased the risk to Mr. Coffey. (ECF No. 27, at 20–21). However, this material fact is disputed. (ECF No. 34-13, at 7–8). Defendant also argues there is no evidence showing Chevron failed to conform to industry standards. *Id.*; *see also Johnson v. Dale C. and Helen W. Johnson Revocable Trust*, 345 P.3d 883, 885 (Wyo. 2015). Chevron further notes in the time since the Carbis system was installed in 2007, thousands of truck-trailer units were loaded without a report of a single incident or complaint against the Carbis safety-cage. (ECF No. 27, at 21).

Plaintiff alleges the cause of Mr. Coffey's injury was the failure of the modified safety-cage to prevent him from hitting the ground. (ECF No. 34, at 12). Plaintiff contends Chevron's custom and industry practice is evidence the Defendant acted unreasonably in removing the third rail from the Carbis system by citing the deposition of Mr. Matthews, Chevron's Operation Manager, stating he would not have approved the removal of the bottom rail of the Carbis system. (ECF No. 34, at 13–14; Ex. 23 165:12–166:03).

Plaintiff also alleges Occupational Safety and Health Administration ("OSHA") standards are evidence that Chevron acted unreasonably. (ECF No. 34, at 19). Specifically, Plaintiff contends Mr. Coffey is within the class of individuals that OSHA regulations are designed to protect and failure to comply constitutes unreasonable care. *Id.* Defendants argue the OSHA standards cited in the Complaint do not apply to Mr. Coffey because a 1996 OSHA memo indicates the standard does not apply to "falls from rolling stock." However, under Wyoming law, without a showing of control (which is at

dispute in the current matter), regulations alone do not create a duty of care. *Franks v. Independent Prod. Co.*, 96 P.3d 484 (Wyo. 2004); *see also Infra* Part A.iii.

Defendant also seeks summary judgment on grounds that a property owner is not required to protect against hazards incidental to the work the injured party is required to perform. *See Hill v. Pacific Power & Light Co.*, 765 P.2d 1348, 1349 (Wyo. 1988). However, the current matter is distinguishable from *Boswell* where the Court found the owner of a bentonite processing plant did not owe a duty of care to a plaintiff—a driver of a truck and flatbed unit—who was injured by a fall while covering a load with a tarpaulin. *See Boswell*, 236 F.R.D. 682, 693 (D. Wyo. 2006), *aff'd* 215 Fed. App'x 771 (10th Cir. 2007). As noted by the Plaintiff during oral arguments, not only was an essential element of a negligence action missing in *Boswell*, but the Court determined a duty of care was not owed by the plant owner where the driver in question was not required to tarp the load in a certain way, no plant employees assisted in covering the load, and the driver used his own equipment to cover the flatbed. *Id.* Similarly, in *Hill* the Wyoming Supreme Court affirmed the trial court's granting of summary judgment where Plaintiff, an employee of an independent contractor, was injured when he fell from scaffolding while working at Defendant's plant. *Hill*, 765 P.2d at 1350. Plaintiff fell from the scaffolding when he tried to hand a torch to another employee and the handrail on the scaffolding broke loose, causing him to fall. In affirming summary judgment, the Court in *Hill* summarized the law concerning the duty a property owner might owe to employees of the independent contractor performing work on the employer's workplace:

the owner of the workplace, who employs an independent contractor and "retains the right to direct the manner of an independent contractor's performance or assumes affirmative duties with respect to safety owes a duty of reasonable care to an employee of the independent contractor even if the employee is injured doing the very work the [independent] contractor was hired to perform."

*Id.* at 1349; citing *Jones v. Chevron*, 718 P.2d 890, 896 (Wyo. 1986). The Court in *Hill* noted that the facts before it supported summary judgment in that "PP&L [Pacific Power & Light], as movant for summary judgment, put forth evidence showing that PP&L did not retain the right to direct NESCO's [North American Energy Services Corporation] construction **or later modification of the scaffolding that caused Hill's fall.**" *Id.* at 1350 (emphasis added).

Here, unlike in *Hill* and *Boswell*, Chevron provided the equipment (the Carbis safety-cages) used to load the trucks at Chevron's Glencoe Terminal which are alleged to be the cause of decedent's fall and death. Therefore, there is a genuine question of fact as to whether Chevron, having retained control over the equipment used, failed to exercise reasonable care.

  ii. *Premise Liability—Open and Obvious Dangers*

Defendant directed the Court during oral argument to *Ruhs v. Pacific Power & Light*, 671 F.2d 1268 (10th Cir. 1982) as an example of a Court applying the open and obvious danger rule outside the context of a natural hazard. However, the Wyoming Supreme Court has most recently held the rule is limited to dangers resulting from ice, snow, and wind. *See Glenn v. Union Pacific R.R. Co.*, 176 P.3d 640, 644 (Wyo. 2008). For non-natural conditions, even if the danger is "perfectly obvious to the plaintiff," it is "the

jury's function under the comparative negligence statute to compare the plaintiff's negligence with that of the defendant." *Glenn*, 176 P.3d at 644 (citing *Stephenson v. Pacific Power & Light Co.*, 779 P.2d 1169, 1180 (Wyo. 1989)). Defendant's motion for summary judgment based on the open and obvious danger rule must be denied.

    *iii.    Independent Contractors and Exercise of Control*

Wyoming adopts the Second Restatement of Torts § 409 which recognizes "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." *See Merit Energy Co., LLC v. Horr*, 366 P.3d 489, 494 (Wyo. 2016) (citing RESTATEMENT (SECOND) OF TORTS § 409, cmt. b). There are two exceptions to this rule, vicarious liability based upon *respondeat superior*; or liability based upon the owner's negligence in connection with the work being done. The parties do not raise an issue of vicarious liability. However, Plaintiff asserts Defendant is directly liable because of Chevron's connection with the work performed at the Glencoe Terminal. As set forth in *Jones:*

> "quite apart from any question of vicarious responsibility, **the employer may be liable for any negligence of his own in connection with the work to be done. * * * So far as he** in fact gives directions for the work, **furnishes equipment for it**, or retains control over any part of it, he is required to exercise reasonable care for the protection of others * * *. If the work is done on the employer's own land, he will be required to exercise reasonable care to prevent activities or conditions which are dangerous to those outside of it, or to those who enter it as invitees. In all of these cases, he is liable for his personal negligence, rather than that of the contractor." W. Keeton, Prosser and Keeton on Torts § 71 at 510–511 (1984). See also *Ruhs v. Pacific Power & Light,* 671 F.2d 1268, 1272 (10th Cir. 1982) (applying Wyoming law) (footnotes omitted) (emphasis added).

*Jones v. Chevron U.S.A., Inc.*, 718 P.2d 890, 893–94 (Wyo. 1986). In *Jones*, the Wyoming Supreme Court recognized the exception under § 414 of the Second Restatement of Torts which states:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*Jones v. Chevron, U.S.A.*, 718 P.2d 890, 895 (Wyo. 1986) (citing RESTATEMENT (SECOND) OF TORTS § 414). As a result, an employer can become liable in tort to an independent contractor's employee or others where it exercises control over the manner of the independent contractor's performance or where it assumes affirmative duties with respect to safety. *Jones,* 718 P.2d at 897. The operative phrase in the exception is "control of any part of the work." *Merit Energy Co.*, 366 P.3d at 494–95. "An owner does not have to retain a great deal of control over the work to be liable for an employee's harm under § 414....[as] the owner can be liable even if he gives up enough control to make the contractor an 'independent contractor' under vicarious liability analysis." *Jones*, at 895. "To determine whether the nature and extent of the control present is sufficient to impose liability, both applicable contractual provisions and the actual exercise of control are relevant." *Franks v. Independent Prod. Co.*, 96 P.3d 484, 490 (Wyo. 2004) (citing Jones, 718 P.2d at 896). In addition to the existence of a contract, the right of payment, right to terminate the relationship without incurring liability, furnishing of tools and equipment, scope of the work, and control of the premises where the work is to be done are factors which are important to determining control. *Singer v. New Tech Eng'g L.P.*,

227 P.3d 305, 309 (Wyo. 2010); *see also McSwain v. System Energy Res., Inc.*, 97 So.3d 102 (Miss. Ct. App. 2012) (finding a duty existed when the owner provided safety equipment and required the independent contractor to follow its safety program).

The Defendants contend this Court should grant summary judgment based on the Wyoming line of cases regarding independent contractor liability. (ECF No. 27, at 14). Defendants cite *Boswell* where the liability of a property owner was in question when an independent contractor fell while covering a semi-tractor trailer. *See Boswell v. Colloid Envtl. Tech.*, 215 Fed. App'x 771 (10th Cir. 2007) (affirming summ. j.) (holding no control was asserted by property owner over how the driver covered his load). Additionally, Defendants argue *Waltman* applies where this Court considered whether a property owner was liable when an independent contractor fell from his semi-truck while also covering the load with tarps. *See Waltman v. Georgia-Pacific LLC,* 2:09-CV-280 (D. Wyo. Oct. 14, 2010) (Order Granting in Part and Denying in Part Defendant's Motions for Summary Judgment). However, these two cases are distinguishable from the current matter because in *Boswell* and *Waltman* the drivers were directed to a flat isolated location on the premises after loading where both were expected to cover their flatbed trailers without the assistance of any safety device, equipment, safety control method, or direction from the property owner.

Contrast the line of Wyoming cases cited by the Defendant with *Bonds* where a court considered whether the property owner owed a duty to a driver where the owner had installed safety measures, such as a catwalk and safety nets, in a truck loading area. *See Bonds v. SAPA Extrusions LLC,* 135 So.3d 799 (La. Ct. App. 2014) (reversing summary

judgment). In *Bonds*, the facility owner not only provided the safety equipment in question but also required drivers to be informed about and to follow the owner's safety policy. *Bonds*, 135 So.3d at 804. Plaintiff alleges Chevron required BTI drivers to follow Chevron's rules and required drivers to use Chevron's equipment: loading rack, safety-cages, load-arm spout, and breathing-air line at the Glencoe Terminal. (ECF No. 34, at 5); *see also* (ECF No. 34, Ex. 3 at 168:17–22). The Plaintiff also alleges drivers were required to follow Chevron's forty-point loading procedures. (ECF No. 34, at 5). As a result, Plaintiff contends, under the independent contractor line of cases, Chevron owed a duty to Mr. Coffey because it controlled the safety device which allegedly caused Mr. Coffey's death.

Chevron argues it exercised no control because the parties were not in privity of contract. Chevron sold sulfur to Merit Energy but stored the sulfur at the Glencoe Terminal; Merit sold the sulfur to Simplot and it was Simplot that hired BTI to transport sulfur from Chevron's facility; therefore, Chevron had no contract with BTI. (ECF No. 27, at 3); *see also* (ECF No. 34, Ex. 19 at 17:1–24, 18:10–19:6). Defendant also alleges control of the hazard that Mr. Coffey was exposed to was ceded to BTI as set forth in the Chevron Operating Procedure, "[t]he trucking company is responsible to insure this process is conducted in an appropriate and safe manner. This includes training employees in proper steps and hazards associated with this job before they are allowed on Chevron premises." (ECF No. 26, Ex. 4). The Court notes, with respect to the allegations made by both parties, Chevron's operating procedure for the Glencoe Terminal makes no express reference to fall protection measures but for a reference to lowering Chevron's

14

gangway onto the truck tanks. Instead, the operating procedures focus on facility access, preparing the truck for loading, and safety measures to address the risk of $H_2S$ gas. (ECF No. 26, Ex. 4 at 2.6).

Determinations of whether a property owner maintained sufficient control over an alleged hazard to impose liability is a question of fact for a jury unless only one reasonable inference can be drawn. *See Merit Energy Co.*, 366 P.3d at 496 n. 5; *see also Jones,* 718 P.2d at 896 n. 4. "The adoption of a safety manual is but one aspect of the analysis regarding the question of whether a general contractor has assumed affirmative safety duties at a particular job site." *Abraham v. Andrews Trucking Co.*, 898 P.2d 1156, 1157 (Wyo. 1995). Under Wyoming law, a genuine dispute of material facts exists as to whether Chevron maintained sufficient control over the loading terminal and its equipment to impose liability. The absence of any contractual relationship between Chevron and BTI does not remove from Chevron a duty to exercise reasonable care if it retained control over that aspect of the work resulting in the harm. *See Franks,* 96 P.3d at 492 (under Wyoming law, owner owes a duty of reasonable care to an invitee, including employees of an independent contractor under all circumstances—which includes a duty to take reasonable precaution to protect the invitee from dangers which are foreseeable from the arrangement or use). Based upon the foregoing, the Court finds a genuine issue of material fact exists.

### B. Punitive Damages

Plaintiff also seeks punitive damages against Chevron to serve as a deterrent against the alleged conduct as set forth in the Complaint. (ECF No. 1, at 12). Defendant

responds that the evidence fails to demonstrate Chevron's conduct involved some "element of outrage" or that Chevron possessed the requisite mental state to satisfy the "willful and wanton" misconduct standard required to impose punitive damages. (ECF No. 27, at 23).

In Wyoming, punitive damages are disfavored "and are to be allowed with caution within narrow limits." *Weaver v. Mitchell*, 715 P.2d 1361, 1369 (Wyo. 1986). Punitive damages are only appropriate for "circumstances involving outrageous conduct, such as intentional torts, torts involving malice and torts involving willful and wanton misconduct." *Cramer v. Powder River Coal, LLC*, 204 P.3d 974, 979 (Wyo. 2009). "The Wyoming Supreme Court defines willful and wanton misconduct as 'the intentional doing, or failing to do, an act in reckless disregard of the consequences and under circumstances and conditions that a reasonable person would know that such conduct would, in a high degree of probability, result in harm to another.'" *Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1055 (10th Cir. 2016) (citing *Cramer*, 204 P.3d at 979). "The aggravating factor which distinguishes willful misconduct from ordinary negligence is the actor's state of mind." *Id.* A willful or wanton state of mind is one "that approaches intent to do harm. *Id.*

Defendant seeks to dismiss Plaintiff's claim for punitive damages because there is no evidence showing Chevron's conduct was willful or wanton. Defendant cites deposition testimony from both the Chevron's Health Environment and Safety Specialist and Senior

16

Plant Operator stating their belief the modified Carbis safety-cage was safe. (ECF No. 27, Ex. F, 100:7–10, 137:18–138:18, 143:2–6; Ex. L 108:5–16).

Plaintiff alleges Chevron knowingly cut off part of the safety-cage but offers no evidence to support this claim or that its removal was done to intentionally harm those using the loading facility. Instead, Plaintiff cites an expert report which concludes it is "well known in industry, that falls from height are likely to result in serious injury or death." (ECF No. 34, Ex. 22 at ¶ 2.1). The report then draws a legal conclusion that Chevron acted with recklessness and willfulness based its failure to provide a safe workplace and recognize hazards which Mr. Coffey was not aware. (ECF No. 34, Ex. 22 at ¶ 4.6). If proven, these facts could be sufficient to support a claim of negligence. However, the expert opinions of Mr. Ziegler that the Plaintiff asks the Court to consider do not demonstrate outrageous conduct, willful and wanton conduct, or a state of mind approaching intent to do harm. *See Cramer v. Powder River Coal, LLC*, 204 P.3d 974, 980 (Wyo. 2009). There is no evidence to suggest the fall hazard associated with the use of the modified Carbis safety-cage were known. In fact, it is undisputed that prior to Mr. Coffey's tragic accident thousands of trucks had been loaded from the facility without incident. In opposing summary judgment "[t]he opposing party must affirmatively set forth material, specific facts in opposition to a motion for summary judgment, and cannot rely only upon allegations and pleadings...and conclusory statements or mere opinions are insufficient to satisfy the opposing party's burden." *Loredo v. Solvay Am., Inc.*, 212 P.3d 614, 619 (Wyo. 2009) (quoting *Christenson v. Carbon Cnty.*, 100 P.3d 411, 413 (Wyo. 2006).

Viewing the evidence most favorable to the nonmoving party, the Court finds a reasonable trier-of-fact cannot conclude Chevron's alleged actions rise to the level of willful and wanton misconduct. The motion for summary judgment on punitive damages is granted.

## CONCLUSION

Having considered the motions, responses, and relevant pleadings, the Court finds there is a genuine issue of material fact that preclude granting of summary judgment on Plaintiff's negligence claim. Nonetheless, the Court finds the Plaintiff fails to produce factual support which could lead a reasonable trier-of-fact to the conclusion Chevron acted with the requisite intent to permit punitive damages.

THEREFORE, IT IS HEREBY ORDERED Defendant's Motion for Summary Judgment [ECF No. 26] is DENIED with regards to Plaintiff's claims for liability and GRANTED as to Plaintiff's claim for punitive damages.

Dated this 19th day of January, 2017.

Scott W. Skavdahl
United States District Judge